# EXHIBIT

# A

| B 10 (Official Form 10) (12/11) | | |
|---|---|---|
| **UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF CALIFORNIA** | | **AMENDED PROOF OF CLAIM** |
| Name of Debtor: Linda T. Tabor, & Larry D Tabor | Case Number: 12-42023-RLE Chapter 13 | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
NATIONAL RESIDENTIAL ASSETS CORP.

**COURT USE ONLY**

Name and address where notices should be sent:
Bank of America, N.A.
400 National Way
Simi Valley, CA 93065

Telephone number:                email:

■ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____25_____
(*If known*)

Filed on: _____7/5/2012_____

Name and address where payment should be sent (if different from above):
Bank of America, N.A.
P. O. Box 660933
Dallas, TX 75266-0933

Telephone number:                email:

□ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $ 849,640.34

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

■ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money Loaned
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: 3886 | 3a. Debtor may have scheduled account as:
(See instruction #3a) | 3b. Uniform Claim Identifier (optional):
(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ■ Real Estate  □ Motor Vehicle  □ Other
Describe: 4051 PIER POINT, DISCOVERY BAY, CA 94514

Value of Property: $ Unknown at this time

Annual Interest Rate 3.2500 % □ Fixed or ■ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ 178,092.83

Basis for perfection: Deed of Trust/Mortgage

Amount of Secured Claim:    $ 849,640.34

Amount Unsecured:    $

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

□ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

□ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

□ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

□ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

□ Taxes or penalties owed to governmental units – 11U.S.C. §507 (a)(8).

□ Other—Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Jonathan J Damen
Title: Attorney for Creditor
Company: Routh Crabtree Olsen, P.S.
Address and telephone number (if different from notice address above):
1241 E. Dyer Road, Suite 250
Santa Ana, CA 92705

Telephone number: 714-277-4937   email: jdamen@rcolegal.com

/s/ Jonathan J Damen   3/5/13
(Signature)   (Date)

RCO # 20651

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

### INSTRUCTIONS FOR PROOF OF CLAIM FORM
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

___DEFINITIONS___ | ___INFORMATION___

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | Linda T. Tabor, Larry D Tabor | Case number: | 12-42023-RLE |
| Name of creditor: | NATIONAL RESIDENTIAL ASSETS CORP. | Last four digits of any number you use to identify the debtor's account: | 3886 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. Principal due (1) $701,257.86

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 6.750% | 5/1/2009 | 12/31/2011 | $126,226.56 |
| 3.250% | 1/1/2012 | 2/29/2012 | $3,798.48 |
| % | | | + |
| Total Interest due as of the petition date | | | $130,025.04 |

Copy total here ▶ (2) + $130,025.04

3. Total principal and interest due (3) $831,282.90

4. The amount listed in Item 1 on the Proof of Claim form includes an escrow advance in the amount of $15,393.57.

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates Incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 5/25/2010 | (1) | $233.50 |
| 2. Non-sufficient funds (NSF) fees | | (2) | |
| 3. Attorney's fees | | (3) | |
| 4. Filing fees and court costs | | (4) | |
| 5. Advertisement costs | 1/10/2012 | (5) | $766.66 |
| 6. Sheriff/auctioneer fees | | (6) | |
| 7. Title costs | 10/17/2011 | (7) | $953.00 |
| 8. Recording fees | 10/3/2011 | (8) | $26.00 |
| 9. Appraisal/broker's price opinion fees | | (9) | |
| 10. Property inspection fees | 4/23/09, 5/26/09, 6/24/09, 7/24/09, 8/25/09, 9/24/09, 10/26/09, 11/23/09, 12/23/09, 1/29/10, 2/23/10, 3/22/10, 4/26/10, 5/26/10, 2/26/11, 3/23/11, 4/20/11, 5/26/11, 6/25/11, 7/23/11, 8/26/11 | (10) | $315.00 |
| 11. Tax advances (non-escrow) | | (11) | |
| 12. Insurance advances (non-escrow) | | (12) | |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | |
| 14. Property preservation expenses. Specify: | | (14) | |
| 15. Other. Specify: Foreclosure Trustee Fees | 9/28/2011, 1/10/2012 | (15) | $422.50 |
| 16. Other. Specify: Posting Fees | 1/10/2012 | (16) | $160.00 |

| | | | | |
|---|---|---|---|---|
| 17. Other. Specify: | Foreclosure Mailing Costs | 10/11/11, 10/28/11, 01/09/12, 01/12/12 & 01/13/12 | (17) | $87.21 |
| 18. Other. Specify: | | | (18) | |
| 19. Other. Specify: | | | (19) | |
| 20. Other. Specify: | | | (20) | |
| 21. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | | (21) | $2,963.87 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

Does the Installment payment amount include an escrow deposit?

☐ No

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable bankruptcy law.

**1. Installment payments due**

Date last payment received by creditor: 7/20/2010

Number of installment payments due (1): 34

**2. Amount of installment payments due**

| | | |
|---|---|---|
| 32 | installments @ $5,231.80 | $167,417.60 |
| 2 | installments @ $3,855.68 | $7,711.36 |
| | installments @ | + |

Total installment payments due as of the petition date: $175,128.96     Copy total here ► (2) $175,128.96

**3. Calculation of cure amount**

Add total prepetition fees, expenses, and charges     Copy total from Part 2 here ►     + $2,963.87

Subtract total of unapplied funds (funds received but not credited to account)     − $

Subtract amounts for which debtor is entitled to a refund     − $

Total amount necessary to cure default as of the petition date     (3) $178,092.83

Copy total onto Item 4 of Proof of Claim form

**4. Current Payment as of April 1, 2012**     $3,889.63

\*\*\*This Proof of Claim is being amended to include the endorsed note.

Bank of America, N.A. services the loan on the property referenced in this proof of claim. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of NATIONAL RESIDENTIAL ASSETS CORP. "NOTEHOLDER".

Note holder, directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Note holder or has been duly endorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.

**Bank of America**

Home Loans

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Notice date: 03/14/2012

Property address:
4051 Pier Point
Discovery Bay, CA 94514

LINDA TABOR
4051 Pier Pt
Discovery Bay CA 94505-1111

## IMPORTANT MESSAGE ABOUT YOUR LOAN

Enclosed is an escrow analysis for your loan. The purpose of this notification is to advise you that the escrow portion of your payment is changing to $595.84 effective April 01, 2012.

## WHAT THIS MEANS

This notification is for informational purposes only. Your next statement will arrive shortly. It will provide a payment coupon and will include the new escrow payment amount of $595.84.

## ADDITIONAL INFORMATION

| | |
|---|---|
| Principal Balance | $701,257.86 |
| Home loan payment due 04/01/2012 | $3,889.63 |

This informational notice is being sent to the following borrowers at address set forth above in reference to the Chapter 13 Bankruptcy filing: LINDA TABOR

## WHAT YOU NEED TO DO

Please keep this notification for your records.

## THANK YOU FOR YOUR BUSINESS

For additional information regarding your escrow analysis, or any other account details, call 1.800.669.5224, Monday-Friday 7a.m. - 7p.m. Local Time. The address for general inquiries and all RESPA Qualified Written Requests is: Bank of America, N.A., Attn: Customer Service CA6-919-01-41, PO Box 5170, Simi Valley, CA 93062-5170.

 Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.





**Bank of America**
**Home Loans**

Property address
4051 Pier Point

Linda Tabor

Statement date
03/14/2012

## ESCROW ACCOUNT REVIEW

| | |
|---|---|
| **ESCROW EXPLAINED** | Part of your monthly loan payment goes into an account to pay for your property taxes and insurance premiums. During the year, payments are made out of this account when bills come due. This notice describes any changes needed in your monthly payment to maintain enough money in your escrow account to pay these bills. In our step-by-step analysis, we determine the data shown below to calculate your new escrow payment. |

*See below for:*
- an in-depth explanation of each step of your escrow analysis
- side-by-side comparison of last year's projected and actual data

### SUMMARY

| | | | |
|---|---|---|---|
| Base amount needed *(see Step 1)* | The expected monthly amount needed to pay your property taxes and insurance premiums | | $595.84 |
| Shortage payment *(see Step 2)* | The monthly amount you must pay into your escrow account to keep the balance from falling below zero during the year | | $0.00 |
| Reserve requirement *(see Step 3)* | The monthly amount allowed by federal law for unexpected tax and insurance increases and other costs | | $0.00 |
| **New monthly escrow payment** *(see Step 4)* | | | **$595.84** |
| **New monthly home loan payment effective 04/2012** *(see Step 4)* | | | **$3,889.63** |

## HOW WE CALCULATE YOUR ESCROW PAYMENT

### STEP 1 — Determine base amount needed for the year

| Escrow items | Amount needed | Frequency in months | Monthly amount needed | |
|---|---|---|---|---|
| County taxes | $2,682.01 | 12 | $223.50 | |
| Homeowners insurance | 1,786.00 | 12 | 148.83 | |
| County taxes | 2,682.01 | 12 | 223.50 | |
| **Total monthly base payment amount** | | | | **$595.84** |

### STEP 2 — Determine lowest projected balance

In the chart located below, we project the amounts you will pay into your escrow account next year and the amounts we will pay out for your insurance and tax bills. Remember, these figures are only projections and may not reflect the actual payments made at the time they are due.

| Month | Escrow deposit(s) | Tax payment(s) | Insurance payment(s) | MIP/PMI payment(s) | Balance |
|---|---|---|---|---|---|
| Beginning balance | | | | | $3,710.69 D |
| April 2012 | 595.84 | | | | 4,306.53 |
| May 2012 | 595.84 | | | | 4,902.37 |
| June 2012 | 595.84 | | | | 5,498.21 |
| July 2012 | 595.84 | | | | 6,094.05 |
| August 2012 | 595.84 | | | | 6,689.89 |
| September 2012 | 595.84 | | | | 7,285.73 |
| October 2012 | 595.84 | | | | 7,881.57 |
| November 2012 | 595.84 | 2,682.01 | | | 5,795.40 |
| December 2012 | 595.84 | | | | 6,391.24 |
| January 2013 | 595.84 | | | | 6,987.08 |
| February 2013 | 595.84 | | 1,786.00 | | 5,796.92 |
| March 2013 | 595.84 | 2,682.01 | | | 3,710.75 * |
| **Ending balance** | | | | | **$3,710.75** |

| | |
|---|---|
| Lowest projected balance | $3,710.75 |
| Shortage payment amount | $0.00 |

\* Lowest projected balance (LPB)

D-The letter (D) beside the escrow balance amount indicates that your mortgage payments are delinquent, and the Beginning balance from Step 2 of HOW WE CALCULATE YOUR ESCROW PAYMENT will not match the Actual Ending balance from the LAST YEAR IN REVIEW section.

At the time of analysis, Bank of America, N.A. assumes that all scheduled mortgage payments will be made to the effective date of your new payment.

Your Lowest Projected Balance (LPB) reflects a balance above zero. In the next step, we will compare this amount to your escrow reserve requirement to determine if there is an overage.

### STEP 3 — Determine reserve requirement

Federal law allows for the collection of a reserve amount to maintain a cushion for unexpected tax and/or insurance increases and other costs. The reserve used for this period is shown below.

| | | |
|---|---|---|
| Lowest projected balance *(see step 2 above)* | $3,710.75 | |
| Total reserve requirement (16.6% of the base amount) * | 1,186.90 | |
| Additional amounts required | .00 | |
| **Monthly reserve requirement ($0.00 divided by 12)** | | **$0.00** |
| Available overage | $0.00 | |

\* Base amount equals the total of payments anticipated to be paid out of the escrow account during the year but excludes PMI/MIP amounts.

Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

**STEP 4**    **Determine monthly payments**

**Calculation of monthly escrow payment**

| | |
|---|---:|
| Base amount needed for taxes and/or insurance *(see Step 1)* | $595.84 |
| Shortage payment *(see Step 2)* | .00 |
| Reserve requirement *(see Step 3)* | .00 |
| **Total monthly escrow payment** | **$595.84** |

**Calculation of monthly home loan payment**

| | |
|---|---:|
| Principal and/or interest | $3,293.79 |
| Total monthly escrow payment | 595.84 |
| **Total monthly home loan payment effective 04/2012** | **$3,889.63** |

## LAST YEAR IN REVIEW

**Current analysis compared to previous**

| Amount needed for taxes and insurance | Last analysis | This analysis |
|---|---:|---:|
| County taxes | $216.30 | $223.50 |
| Homeowners insurance | 144.25 | 148.83 |
| County taxes | 216.30 | 223.50 |
| Total base escrow payment | $576.84 | $595.84 |
| Shortage payment | .00 | .00 |
| Reserve requirement | .00 | .00 |
| Rounding amount | .00 | .00 |
| **Monthly escrow payment** | **$576.84** | **$595.84** |
| Principal and/or interest | $4,669.91 | $3,293.79 |
| Monthly escrow payment | 576.84 | 595.84 |
| **Total payment amount** | **$5,246.75** | **$3,889.63** |

**Summary of escrow change**

As shown, your base escrow amount increased. Your reserve percentage remained unchanged. Your reserve payment remained unchanged. The result of these issues caused your total escrow payment to increase.

A side-by-side comparison of last year's projected escrow account activity and actual activity can be found below.

**Last year's escrow payments**

| Projected | | | | | Actual | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Date | Activity | Paid in | Paid out | Balance | Date | Activity | Paid in | Paid out | Balance |
| | Beginning balance | | | $4,604.89 | | Beginning balance | | | -$5,648.00 |
| 03/01/2011 | Mar Payment | 576.84 | | 5,181.73 | 03/14/2011 | County tax pmt | | 2,595.55 | -8,243.55 |
| 03/02/2011 | County taxes | | 2,595.55 | 2,586.18 * | 11/07/2011 | County tax pmt | | 2,682.01 | -10,925.56 |
| 04/01/2011 | Apr Payment | 576.84 | | 3,163.02 | 01/03/2012 | Homeowners ins pmt | | 1,786.00 | -12,711.56 |
| 05/01/2011 | May Payment | 576.84 | | 3,739.86 | 03/02/2012 | County tax pmt | | 2,682.01 | -15,393.57 * |
| 06/01/2011 | Jun Payment | 576.84 | | 4,316.70 | 03/14/2012 | Jun Payment | 561.89 | | -14,831.68 P |
| 07/01/2011 | Jul Payment | 576.84 | | 4,893.54 | 03/14/2012 | Jul Payment | 561.89 | | -14,269.79 P |
| 08/01/2011 | Aug Payment | 576.84 | | 5,470.38 | | Ending balance | | | -$14,269.79 D |
| 09/01/2011 | Sep Payment | 576.84 | | 6,047.22 | | | | | |
| 10/01/2011 | Oct Payment | 576.84 | | 6,624.06 | | | | | |
| 11/01/2011 | Nov Payment | 576.84 | | 7,200.90 | | | | | |
| 11/02/2011 | County taxes | | 2,595.55 | 4,605.35 | | | | | |
| 12/01/2011 | Dec Payment | 576.84 | | 5,182.19 | | | | | |
| 01/01/2012 | Jan Payment | 576.84 | | 5,759.03 | | | | | |
| 02/01/2012 | Feb Payment | 576.84 | | 6,335.87 | | | | | |
| 02/02/2012 | Homeowners insurance | | 1,731.00 | 4,604.87 | | | | | |
| | Ending balance | | | $4,604.87 | | | | | |

\* Lowest projected balance

D - The letter (D) beside the escrow balance amount indicates that your mortgage payments are delinquent, and the Beginning balance from Step 2 of HOW WE CALCULATE YOUR ESCROW PAYMENT will not match the Actual Ending Balance from the LAST YEAR IN REVIEW section.

P - The letter (P) beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.

At the time of analysis, Bank of America, N.A. assumes that all scheduled mortgage payments will be made to the effective date of your new payment.



RECORDING REQUESTED BY
TICOR TITLE COMPANY
FULLERTON BRANCH

Recording Requested By:
S. BENNETT



```
)STA Co Recorder Office
  WEIR, Clerk-Recorder
  2006-0391085-00
ber
         DEC 07, 2006 12:01:00
      $1.00:MOD  $23.00:REC   $27.00
TCF  $22.00:DAF   $1.80:REF    $0.20
Ttl Pd  $75.00
                  Nbr-0003515877
                     rrc/RJ/1-23
```

P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
VICTOR SANCHEZ

[Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated NOVEMBER 29, 2006 , together with all Riders to this document.
(B) "Borrower" is
LINDA TABOR, AND LARRY TABOR, WIFE AND HUSBAND AS JOINT TENANTS

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 16
-6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291    Form 3005 1/01
CONV/VA

Borrower's address is
4051 PIER POINT, DISCOVERY BAY, CA 94514-1111
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(D) "Trustee" is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated NOVEMBER 29, 2006 . The Note states that Borrower owes Lender
SEVEN HUNDRED TWENTY THOUSAND and 00/100

Dollars (U.S. $ 720,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 01, 2037 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider         [X] Other(s) [specify]
                                                                    LEGAL DESCRIPTION

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

-6A(CA) (0207)    CHL (08/05)       Page 2 of 16                         Form 3005 1/01

Case 12-42023   Claim 25-3   Filed 03/05/13   Desc Main Document   Page 11 of 38
Case: 12-42023   Doc# 85-1   Filed: 11/21/13   Entered: 11/21/13 14:47:56   Page 12 of 20

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of CONTRA COSTA :
[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 008-370-022-6    which currently has the address of
4051 PIER POINT, DISCOVERY BAY ,
[Street/City]
California 94514-1111 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)    CHL (08/05)    Page 3 of 16    Form 3005 1/01

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)   CHL (08/05)        Page 4 of 16        Form 3005 1/01

Case 12-42023   Claim 25-3   Filed 03/05/13   Desc Main Document   Page 13 of 38
Case: 12-42023   Doc# 85-1   Filed: 11/21/13   Entered: 11/21/13 14:47:56   Page 14 of 20

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)   CHL (08/05)   Page 5 of 16   Form 3005 1/01

Case 12-42023   Claim 25-3   Filed 03/05/13   Desc Main Document   Page 14 of 38
Case: 12-42023   Doc# 85-1   Filed: 11/21/13   Entered: 11/21/13 14:47:56   Page 15 of 20

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

-6A(CA) (0207)  CHL (08/05)  Page 6 of 16  Form 3005 1/01

Case 12-42023  Claim 25-3  Filed 03/05/13  Desc Main Document  Page 15 of 38
Case: 12-42023  Doc# 85-1  Filed: 11/21/13  Entered: 11/21/13 14:47:56  Page 16 of 20

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

-6A(CA) (0207)   CHL (08/05)   Page 7 of 16   Form 3005 1/01

Case 12-42023 — Claim 25-3   Filed 03/05/13   Desc Main Document   Page 16 of 38
Case: 12-42023   Doc# 85-1   Filed: 11/21/13   Entered: 11/21/13 14:47:56   Page 17 of 20

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

-6A(CA) (0207)    CHL (08/05)    Page 8 of 16    Form 3005 1/01

Case 12-42023  Claim 25-3  Filed 03/05/13  Desc Main Document  Page 17 of 38
Case: 12-42023  Doc# 85-1  Filed: 11/21/13  Entered: 11/21/13 14:47:56  Page 18 of 20

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

-6A(CA) (0207)   CHL (08/05)   Page 9 of 16   Form 3005 1/01

Case 12-42023   Claim 25-3   Filed 03/05/13   Desc Main Document   Page 18 of 38
Case: 12-42023   Doc# 85-1   Filed: 11/21/13   Entered: 11/21/13 14:47:56   Page 19 of 20

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

-6A(CA) (0207)  CHL (08/05)  Page 10 of 16  Form 3005 1/01

Case 12-42023  Claim 25-3  Filed 03/05/13  Desc Main Document  Page 19 of 38
Case: 12-42023  Doc# 85-1  Filed: 11/21/13  Entered: 11/21/13 14:47:56  Page 20 of 20